J. H. HATTON ET AL V. THE STATE BOARD OF CONTROL ET AL.

No. A-1327. Decided August 5, 1947.
Rehearing overruled October 8, 1947.
(204 S. W., 2d Series, 390.)

*Norman, Stone and Norman, James H. Hounsaville,* for Hatton, and *J. W. Summers,* County Attorney, for Cherokee County, relators.

*Price Daniel,* Attorney General, *Joe R. Greenhill,* Executive Assistant, *Ocie Speer,* Assistant Attorney General, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is an original petition for mandamus filed in this court by the County of Cherokee and J. H. Hatton, n. c. m., suing by next friend, Fred Lunsford, relators, against the State Board of Control and its members, respondents.

On January 17, 1930, pursuant to a jury verdict in the County Court of Cherokee County, it was adjudged that Hatton. was of unsound mind and would "be dangerous, by reason of his insanity, if left at large," and he was duly committed to the Rusk State Hospital for custody and treatment. In August, 1932, while on furlough, he was discharged.

In the same manner, on November 23, 1933, Hatton was again committed to Rusk State Hospital by judgment of the County Court of San Augustine County; and in May, 1935, he was again discharged while on furlough.

By the same procedure, he was adjudged insane by the County Court of Tyler County on May 30, 1939, and committed to Rusk State Hospital. In September, 1940, he was a third time discharged while on furlough, his discharge carrying the notation "condition improved."

On April 20, 1947, certain citizens of Jacksonville complained that Hatton was of unsound mind and likely to hurt himself and others, whereupon he was arrested and placed in Rusk State Hospital. He remained there until May 20, 1947, when the superintendent requested the sheriff to take him from the hospital until he was again tried by a jury and committed in accordance with the statutes. The sheriff then took Hatton and placed him in the jail of Cherokee County, where he has since remained.

On June 3, 1947, the county judge of Cherokee County reopened the case tried in that court on January 17, 1930, in which Hatton was first convicted of lunacy, as above related. After determining that Hatton "had not been restored to his right mind by any proceedings for such purpose since he was adjudged insane" in that original trial, the judge proceeded to try Hatton, "without a jury, none being requested." At the conclusion of the testimony the court adjudged that "Hatton has not been restored to his right mind; that he is still in need of treatment and restraint, and would be dangerous if at large." Then the court entered its order committing Hatton to the Rusk State Hospital, but the superintendent refused to receive him, stating that he had been istructed by the Board of Control not-

to admit Hatton "without a compleely new proceeding, with trial before jury and commitment thereunder."

In that situation relators seek the writ of mandamus requiring respondents to withdraw that order to the superintendent and to admit Hatton under the order issued by the Cherokee county judge on June 3, 1947.

Relators contend that neither the superintendent of a state hospital nor the Board of Control is authorized to grant an unconditional discharge to a hospital patient properly committed by court order.

■ Before one accused of lunacy can legally be committed indefinitely to a state hospital there must be a jury verdict not only that he is of unsound mind, but that his mental condition is such as to render it necessary that he be placed pnder restraint. Art. 5552, R. S. 1925. And unless both propositions are established by the verdict, the accused must be discharged. Art. 5553, R. S. 1925; Goodwin v. Boggus et al (Civ. App.) 53 S. W. (2d) 646.

If the patient can be lawfully committed to a hospital indefinitely only when those two facts exist, it follows that he cannot lawfully be held in the hospital after either of them has ceased to exist. So it has been held that a judgment of insanity and need for restraint is not res adjudicata as to those issues at any time subsequent to the judgment. Wright v. Matthews (Civ. App.) 130 S. W. (2d) 413 (er. dism. cor. judgt.), and authorities there cited. Therefore relators' contention that a hospital discharge permits an administrative officer to set aside a court judgment is without merit.

But relators insist that Art. 5561a, Sec. 4, Vernon's Anno. Civ. Stat., provides the exclusive method whereby a restrained patient's readiness for a discharge may be determined and the previous court order of commitment set aside. We think the statute in question is clearly and necessarily cumulative. It provides that if upon hearing it is found that the patient has been restored to his right mind he shall be discharged, if under restraint, and any pending guardianship shall be "immediately" closed. It follows, therefore, that to hold that the article provides an exclusive remedy to secure the discharge of a mental patient would be wholly to ignore the fact that not all persons of unsound mind are in need of restraint; it would be to ignore the rule that although a person may be of unsound mind

to the extent that he cannot contract, nevertheless he cannot lawfully be restrained unless his mental condition is such as to render it necessary that he be placed under restraint. To hold with relators on their contention would be to hold that when a mentally ill patient has once been confined in a state hospital for treatment he cannot be discharged until he has been completely restored to reason. "The courts * * * in testing the advisability of discharging those confined to insane asylums * * * have * * * recognized that the determinant factors in such situations are not necessarily the same as those which decide the discharge of a committee or guardian of an incompetent. In the latter instance, entirely different considerations are involved from those which arise in discharging the person of a lunatic from custody." 28 Am. Jur., p. 679, Sec. 36. We hold, therefore, that the remedy provided in the statute under consideration for a patient's release from restraint is not exclusive.

■ While our statutes are not explicit on the matter, we think they clearly contemplate that it is the duty of the superintendent of a state hospital to which a mental patient has been committed for restraint and treatment, to determine whether the patient has recovered to the extent that it is no longer necessary that he be held under restraint, and if the superintendent so determines, then to discharge the patient, with the consent of the Board of Control.

There are several of these statutes. For convenience our reference to them are from Vernon's Annotated Civil Statutes. Art. 3174 places the general control and management of every eleemosynary institution in the Board of Control. Art. 693 declares that the Board of Control shall have power, upon recommendation of the superintendent, to discharge any inmate. Art. 3175 prescribes that one of the duties of a superintendent of an eleemosynary institution (state hospital) is to receive and *discharge* patients. Art. 3193j provides: "No patient in a State hospital shall be discharged therefrom * * * without suitable clothing. Inquiry shall be made into the future situation of every patient about to be discharged * * *. No patient shall be discharged * * * from any institution without a personal examination of his mental condition made by one of the hospital physicians within forty-eight hours of his departure, the result of which shall be entered in his case record." That this power of discharge of a mental patient was meant to be vested in the superintendent is made plain by the provisions of a

recent statute, Secs. 3 and 4, Art. 3216a (Acts 1943, 48th Leg.; p. 18) as follows:

"Sec. 3. The State Board of Control shall have the right to cause to be admitted to the Texas Confederate Home for Men at Austin, Texas, any senile aged person *after such person has been duly adjudged insane* * *.*

"Sec. 4. *The Superintendent of the Texas Confederate Home* * * *may,* upon the recommendation of the chief physician employed at such institution, *grant* any senile patient confined therein a * * *discharge in the same manner in which such senile patients are now released from State Hospitals.*" (Italics ours.)

It is further significant that a similar provision is found in Art. 3238a, as amended by Acts 1943, 48th Leg., p. 718, dealing with feeble-minded persons. Sec. 6 of that Article reads:

"The Superintendent of the institution contemplated by this Act shall admit any feeble-minded person upon commitment or legal transfer * * * and *such superintendent is further authorized to* * * *discharge such feeble-minded person* * * in the same manner as is now prescribed by law ·for the discharge * * of any patient confined in the Austin State School." (Italics ours.)

Under a somewhat similar state of facts as are now before us and in a like situation with respect to the statutes, the Supreme Court of Wyoming had this to say, in Byers v. Solier, 16 Wyo. 232, 93 Pac. 59, 62:

"We do not find any express provision of our statutes authorizing the discharge of a patient committed to the insane asylum, and, except by habeas corpus, there seems to be no remedy to enforce such discharge unless afforded by the statute in question. We entertain no doubt however of the power as well as the duty of the proper officers of the asylum to discharge a recovered patient, at least with the approval, or under the direction of the State Board of Charities and Reform, in whom is vested general supervision and control of that and all other charitable institutions supported by the state. Rev. St. 1899, Secs. 633, 634. It is self-evident that the object of establishing the hospital for the insane was not the involuntary confinement of persons of sound and healthy minds, and that such hospital is not a proper place for the restraint of a person subject to no mental infirmity. And indeed the board and superintendent, as appears by the answer herein, and the evidence in this case, have exercised the power of discharge from

time to time, by releasing such patients as were deemed to have reached a proper degree of recovery to warrant it."

The superintendent of the Rusk State Hospital is required by law to be a skilled physician with at least five years' experience in the treatment of mental diseases. He acts under the presumption applicable to all public officers that he would not release a patient except upon his deliberate conclusion that the welfare of the patient and others no longer requires that the patient be restrained. So it seems to us that the efficient and orderly operation of the hospitals of this state requires that their superintendents be held to have the power to discharge patients under the circumstances here presented. We hold, therefore, that on each of the three occasions in question Hatton was lawfully discharged from Rusk State Hospital.

■ It only remains for us to decide whether Hatton can again be committed without a jury trial. We have concluded that he cannot. Since he was discharged by lawful authority on his three previous convictions, the three commitments thereunder no longer have any force. "A commitment ceases to be effectual after an unconditional discharge from the place of lawful restraint by competent authority. If circumstances thereafter arise which seem to require a renewal of custody and continued confinement, another hearing must be had to determine that question." 28 Am. Jur., p. 681, Sec. 40. In other words, Hatton's rights must be measured as if he had never been tried or convicted of lunacy; he stands where he was on January 17, 1930, before his first trial. In that situation, there can be no doubt that he must be tried by a jury. Except for temporary and voluntary detention for a period not to exceed 90 days, which is not involved here, the law explicitly requires a trial by jury. Art. 5551, R. S. 1925, provides that when a lunacy complaint comes up for hearing, "the cause shall be called for trial and a jury of six men impaneled"; and, as we have seen, unless they find that the accused is of unsound mind to an extent rendering it necessary that he be placed under restraint, he must be discharged. Moreover, when a lunacy complaint is filed under our guardianship statutes, Art. 4270, R. S. 1925, prescribes, "When the person charged is brought before the judge he shall, either in term time or in vacation, cause to be impaneled a qualified jury to try the case and decide whether such person is of unsound mind." Then, as if to make assurance doubly certain, Art. 3193c-2, Sec. 1 (Acts 1943, 48th Leg., p. 341, Ch. 226) declares: "No person shall be committed to any State hospital or state institution for the treatment of the insane or other

mentally ill persons for a period of more than ninety (90) days unless such person has been adjudged insane by a duly qualified jury in a lunacy proceeding, as provided for under the present statutes of the State of Texas."

After holding that a commitment for lunacy ceases to be effectual after the patient's unconditional discharge from restraint, by competent authority, Byers v. Solier, supra, declares: "If circumstances thereafter should arise seeming to require or justify a renewal of the custody and restraint, in the interest of the person or the public, another hearing ought to be had to determine the question. Great injustice would often, if not generally, result from a different rule, even if the legal rights of the party to be personally affected were not to be considered. But a person charged with insanity or other mental infirmity has the same legal right as any other citizen to claim the benefit of constitutional and statutory provisions effecting his personal liberty."

The statutes plainly require that Hatton be tried and convicted by a jury before he can be confined in Rusk State Hospital, and it is not within the province or power of the courts to deprive him of that right. Therefore, respondents were correct in instructing the superintendent not to receive him "without a completely new proceeding, with trial before jury and commitment thereunder."

We are not unmindful of relators' suggestion of the extra financial burden imposed on those counties in which state hospitals are located in retrials of discharged mental patients, but courts cannot give ear to considerations of that sort in passing on the constitutional and statutory rights of a citizen. Relief from that situation is exclusively a problem for the legislature.

Relators' petition is denied.

Opinion delivered August 5, 1947.

Associate Justices Simpson, Taylor and Hickman not sitting.